Next case for argument is 23-1848 Petro Mex v. United States. Mr. Greenspoon, please proceed. Thank you, Judge, and good morning, your honors. That's never happening. May I please the court? Both sides agree that this court reviews all points of error under the de novo standard in this appeal. Petro Mex understands it must prevail on three issues to win reversal. Those issues are statute of limitations, the government's contract violation, and the affirmative defense of prior material breach. This court should reverse on all three issues. First, the continuing claims doctrine precludes the limitations defense. That is because the BLM's 2009 actions that first triggered contract breach for the breach pleaded at paragraph 38 in the complaint undisputedly happened within the limitations period. Now, your argument on statute of limitations, my understanding, is that argument not limited to the continuing claims doctrine? I'm a little confused because I think we framed it all as the continuing claims doctrine because we noted that there had been a prior shut-in, but supervening events occurred in 2009 that actually created the liability for the breach of paragraph 38. I can get into details of that as I continue. I share Judge Cunningham's question. I don't see this as fitting within the rubric of continuing claims. I see August of 2009 as an independent breach argument, and I don't see why this isn't just an accrual question. Well, I believe that's true as well. If I answered inaccurately, I apologize. Perhaps we did argue it exactly that way in the brief, but that would be an additional reason to find no statute of limitations defense. Can you show us where you did make that argument? Because I at least asked you that question in part because in the red brief on page 27, I think they were saying you didn't argue it in terms of accrual. Your Honor, I surrender to whatever the briefs actually say. So you just agree with the red brief? You surrender? Well, no. I don't have the time in view of the argument to look through the brief, the blue brief, to see if that's in there. Did you make the argument that the termination of lease, which is the August 26th date, is an independent accrual? Did you make the argument that was the accrual of the claim? I think we said that substance because we said that there was not, we used this terminology in our blue brief, we said the termination was not even a whisper in 2008. In 2009, a number of supervening events occurred that were separate and distinct from whatever had happened in 2008. So the April 1st, 2009 letter, for example, that was the first time the BLM warned of termination, and it explained for the first time the absence of a field compressor as the basis for termination. The March 30th, 2009 site visit, that was two days before, that revealed the missing compressor concluded that all prior incidents were fixed and no new incidents were reported. So the compressor basis was sparkly new in 2009, replacing prior reasons for the moving target shut-in order. If you asserted a claim for the termination, but you also asserted a claim for the shut-in that happened prior. Yes, specifically that was a yes or a no. So if we don't buy your argument on the continuing claim doctrine, then that would be a violation of the six year statute of limitations, the shut-in, not the termination. You see that claim accrued then. What's interesting is the trial court ruled, our position was in the trial court, the October 2008 refusal to lift the shut-in triggered the accrual of the paragraph 37 breach of contract claim. The district court had a different view of that October 2008 set of events and found the phone call we relied on, or found that we didn't support the existence of the phone call we relied on. So the district court moved that paragraph 37 accrual back to, I think, June of 2008. And that is not on appeal here today. The appeal here today is just the paragraph 38 breach, which targets the termination, which happened August 26, 2009. That was an independent breach. And as said, the rationales were replaced. The shut-in rationale was replaced. Then in May 2009, the rationales for the shut-in expanded. And they now included a royalty of rearages and a bond deficiency. So paragraph 38 breach liability did not accrue until 2009. And in terms of the record, I would point to one final thing, which is appendix 2291. That's within the June 16, 2009 order from the BLM. And appendix 2291. Within that document, that is the very first time that the BLM says it is a so-called order of the BLM to continue the shut-in on grounds of, which we now know are improper, royalty of rearages and the bond increase deficiency. So again, all the events are supervening that we rely on for the breach of paragraph 38. The second issue on appeal is liability itself. And here, Interior's Board of Land Appeals already ruled in favor of Petramex on the key issues concerning termination and cancellation. So they only ruled on a discrete issue on whether the wells were capable of producing. They went far, far beyond that discrete issue, Your Honor. And the way you know that is just look at the headnotes at the very beginning of the decision and then look at where those headnotes are keyed at the end of the decision one and two. The holdings of the IBLA are that it was error for any termination process to begin at all. It was an erroneous activity under the regulations. There was no right by BLM to even commence the termination process. And I'll tell you, I struggle with this issue in regards to there was a factual discrete finding, it seems, that was made. But it's hard to advance that to say, well, we may have back up this for damages. So it is a factual finding. It should have given some effect, it seems to me. But it seems it's a bridge too far to say, okay, you wouldn't breach a contract just based on that factual finding. Right. No, I understand the issue. And I think a way to sort of solve the puzzle is recognize that it's only a half step more to the breach conclusion. And that half step is you read section one of the contract, the lease. Section one says we have exclusive use to extract minerals and gas. But you haven't asserted section one down below, but that's not in the brief. Oh, we did assert section one in the brief. You did, because it seems like you were just limiting it to section seven in terms of your breach of contract, which you argued to us. Yeah, statement of the case starting page five and six, we start by quoting section one. What was that page again, I'm sorry? Page five of the blue brief. We start by quoting section one. But certainly in a remand. No, you cited there, but my question is, do you have to make the argument that they breached section one as supporting your breach of contract claim? I believe we did. I know we focused on section seven, which I can also go into. No, I know you did that, but I didn't see where you asserted section one as your breach claim. If you want, can you point at me where that is in your blue brief? Well, in the blue brief, it would be, I believe the style of our argument was not to, was just to show issue preclusion exists. And we did draw the conclusion that that means there's only damages left. I don't think we did a fulsome argument on that final half step. Well, but you don't make that in section, your issue three, you don't raise this either. I guess the point I'm just trying to make is, it doesn't seem that you make the argument of a breach of contract on section one of the lease. It is certainly made below. No, I know it was made below, but on appeal here, it wasn't made. Right. It's possible, you're correct, Your Honor, that might be omitted as a part of the argument. So how does that impact us in this analysis? I think we have fulsomely asked this court to reach and decide the issue preclusion question. And the issue preclusion question, we've listed out in the blue brief those things that we believe are precluded. But I also share Judge Mazzot's concern here in terms of there not being an identity of issues. I feel like you're asking us to take a step too far. I think your additional half step is important. And perhaps it could be done on remand. But if there's an issue preclusion conclusion or finding by this appellate court, then that can go back on remand for that final half step. And here's what I mean by that. In the blue brief, we identified specifically the collection of issues that were precluded or that should have been found precluded. That collection of issues could certainly go back to the trial court. Is there a page you want us to look at in the blue brief? Yes, Your Honor. It's under issue one. Perhaps the reply was a better, I remember a bullet-pointed list. Maybe to try to streamline it and following up on Judge Mazzot's question in particular, are you just trying to contend that the back finding should be binding and then up on a remand, they'll deal with this whole issue in terms of the breach? It's our argument on appeal that the issue preclusion doctrine has full sway here. The IVLA decision has full preclusive effect on any overlap issues, including facts or law. But what do we do if we determine that just that underlying factual decision wasn't given full effect? We don't believe that it gets to the issue of saying, you went and breached a contract, and we went back for damages. So let's say we don't go that far. How does that impact on a remand if we say you didn't get preclusive effect to just one issue? I'll give you a concrete example of what should happen on remand. Juxtapose the court's decision at appendix page 122 where they say it was not error for the termination process to go forward with appendix 2370 where IVLA says it was error for the termination process to go forward. In particular, in the IVLA decision, and there's a different citation format, 180 IVLA 104, the agency board clearly held that reasonable time hadn't been given to my client to show proof of capability to extract in payable quantities. So the reasonable time prong was absent according to the findings of the agency board. Yet on page 122, the lower court said that, no, they had plenty of reasonable time. Those are diametrically opposed conclusions. But can you answer Judge Masson's question just kind of overall and just directly answer it without giving us your example? Right. The facts and conclusions of the IVLA should be given preclusive effect in this litigation. Yes, but if we don't, Judge Masson's question, if I understood it right, was if we don't agree with your sweeping preclusion argument, but we agree with a lesser version, like the facts findings, what is the proper course of action for this court under those circumstances? And I tried to get to that. We could delineate exactly which conclusions are in the IVLA opinion, which were in conflict with what the court did. Those were the conclusion of the IVLA. You're not helping me. What would be the outcome? What would we do? Do we vacate and remand? Oh, of course. Of course not. And ask the tribunal to reconsider the ultimate legal conclusions accepting these facts? I think the simplest, most efficient order of the court would be a vacate and remand with direction to consider the IVLA decision as preclusive. I think he doesn't have to answer that question. All right. Okay. Can you say the rest of the time for me? Yes. Yes, that will be fine. All right. Why don't we let him say the rest of the time? All right. Thank you, Your Honor. Ms. Westerfield. Good morning. May it please the Court? There is a very simple path forward with this case, and that is for this Court to also find that Petramex's claim, which is simply untimely. And to start with, the only purpose of the trial was to determine whether a verbal shut-in order happened in October 2008. The trial court correctly found that that never happened, and that's at page 103. Well, what do you do with the August 2009 independent claim and paragraph number 38 of the complaint? That doesn't feel time-barred. It is, Your Honor, because what happened here is once that shut-in order was put in place, in May 2008, Petramex has always alleged that the field office, the BLM, should have lifted that shut-in order by no later than June 2008. Because the field office did not lift that shut-in order, Petramex could not produce in paying quantities, and according to Brown, Parker States, it's a continuing negative effect that the lease was later terminated because it could not produce in paying quantities. And that was part of the discrete harm. I mean, the termination, that's a land right that's actually being terminated. Everything that happens before didn't result in termination. So irrespective of whether or not anything before that may be barred by the statute of limitations or any claim from that, it seems like that's a separate harm that generates, that gets accrued on August 26, 2009. I disagree, Your Honor, and the reason why is because, again, from May 2008, and the shut-in order is 2202 of the appendix, through that termination, the, it was consistent by the BLM, the field office, that it was being terminated because they were not allowed to produce in paying quantities. In the 60-day letter, that's a 2244 of the appendix, says that same thing. You will be terminated if you cannot produce in paying quantities. And then the recommendation to terminate, as well as the lease termination itself, which is a 2290. Whether it could pay in sufficient quantities was eventually reversed, too. But the irrespective of that is, just general property rights, when you terminate a property right, that's a discrete harm. That's, I'm having trouble wrapping my head around why that wouldn't set up the statute of limitations in terms of being accrued on the date when you terminate someone's property. Well, and the reason why it's not a distinct harm is... Irrespective of what set it up, it's still, until they terminate it, that seems like that's notice to the landowner that, hey, you have to go take some action. Well, that, well, and that's exactly it. It is notice to Petromax. There was repeated notice to Petromax. But not until the termination. I mean, it seems like, and I guess, again, I know you disagree, but I disagree respectfully, that a termination of a property right seems like that's when that property right, that accrual for any claim starts on the day you terminate that person's right. But it started earlier than that, Your Honor, because it... None of that actually resulted in the termination. But... So, yes, there's other events that happened that I think could be barred by a statute of limitations in terms of trying to assert those. But the claim of a termination of a right didn't happen until you actually terminated it. Except with the BLM, it's a termination by operation of law. And so that is because they were failing to produce in paying quantities. And again... But what do we do with that when that was all circular in terms of that being reversed because it was sent in so they couldn't produce? That was certainly capable of producing. But that's exactly the point, where even the IBLA had said, you put them in a catch-22, you won't let them produce, but yet you still terminate them, and all of it flows together. Where even in Petromex's brief here before the court, in both briefs, they also acknowledged that it's all, it all flows together and all flows... Suppose that we disagree with you. Can you tell us what happens then? If we agree, if we find that termination of a property right is a distinct harm, and we find that the August, to be very clear, 2009 termination does not fall with your statute of limitations argument. So once we make that finding, what is your next argument? What should happen? You should still affirm. And the reason why is, is because the trial court, although it did make the statute of limitations finding and did hold that all of it was one harm, the trial court alternatively determined that there was not a breach of contract. And in addition to that, also determined that there were prior material breaches that Petromex had committed. And I disagree with my friend here where his viewpoint was this should be vacated and remanded for further factual development. Well, this was a five-day trial and there was extensive testimony and there's actually, there were only four witnesses, but it was over five days. And everything was addressed that, and I believe the list of different things that my friend believes should have, should be remanded for more information is when the notices of incidents of non-compliance were fixed or when the compressor was removed. Yes, let me ask this issue of remand or how to handle that is the specific finding that was reversed was that the well was capable of producing paying quantities. And although I don't agree with issue preclusion in terms of remaining aback from breach of contract and its damages, it appears that because of that finding wasn't, it seems to me it wasn't given effect to, it permeates everything. And tell me why that's not the case. That because that was kind of almost ignored in terms of how it impacts everything else in the case. Well, so it's interesting where, and so impact in the sense of issue preclusion or particular factual findings. Which is how everything in terms of the decisions were made in terms of, because it seems to me that that wasn't given, the factual finding wasn't given preclusive effect. And so it seems like we're not, we can't determine those factual findings here. It has to be remanded back, vacated and sent back to give that preclusive effect. And how does it affect the analysis? Well, so it's interesting where even with the IVLA opinion, Petromex, even before the trial court, only wanted to pick and choose for facts that it wanted to have preclusive effect. An example of that is that the Appendix 857, Note 8. But that isn't for us to figure out, right? Isn't that something that would be figured out on a vacating basis? Oh, I understand, Your Honor. But again, the trial court even quoted the IVLA decision in the lengthy opinion. But also, again, everything, and I guess I also want to step back just a second. So with the IVLA, it was a declaration from the president of Petromex making various statements in the declaration, and then just some documents. And that's all that the IVLA had before it. Versus again, this was an actual trial, there was direct cross-exam and everything, and more exhibits that were presented to the trial court. And so, and it had been brought up, and this is not in the appendix, but in the opening argument, and I have had this case for 10 years, so I apologize if I'm too close to the facts. But it had been argued that the IVLA decision should have, the facts at least, should have preclusive effect. And Judge Horne had acknowledged that, well, there is this opinion, I'll look at it, but we're here to get live testimony. Yes, but if we think it should have preclusive, again, this is kind of like if we think the August 2009 claim survives statutory limitations. If we think fact findings of the IVLA should have preclusive effect, then what happens? Then what happens is, so they brought a breach of contract claim in the Court of Federal Claims. The IVLA does not have jurisdiction over breach of contract claims, and so it was up to Judge Horne to decide, well, you may have cited the wrong regulation. So, and they also did not argue. Yes, but if we find she didn't give preclusive effect to the fact findings, don't we have to send it back to her for her to reconsider the breach of contract claim in light of the preclusive effect that those fact findings should be given? And no, and the answer's still no to that, Your Honor, because again, because they could not bring a breach of contract action in the IVLA, the field office at Briellum could not assert a prior material breach argument. And so the cause of action is entirely different at the Court of Federal Claims. And even if- Wait, so I, go ahead. I'm struggling, so don't you go. It just seems your argument supports remanding and sending it back to consider these issues. Yeah, but they already were all considered, Your Honor, and I guess- No, that's my problem, is it doesn't seem like the unopening factual finding wasn't truly considered. And show me where in the record that that was actually considered and it gave preclusive effect to those factual findings. Well, it's, I mean, I guess it's- Because that is my problem, and please explain to me why I'm wrong, because it seems like that factual finding is so important to the outcome of the case. It needs to be sent back to give that preclusive effect and then to do the analysis again and decide. And that was acknowledged in, so the trial court with that, that was in the discussion of the breach of contract where they had alleged, they'd never alleged before the trial court that section one was a breach, so the, but they did argue section seven. So in other words, that- Well, they argued down below both. Well, and- My argument was, I don't think they raised section one either. And with the trial court, again, with section seven, what the IBLA said was that, BLM, you terminated, but you shouldn't have terminated because they were capable of production and paying quantities, so you should have canceled the lease. That's what the IBLA said. And so the trial court didn't- But are you able to answer his direct question of showing us exactly where in the record we can see that this has been done? Yes, and so with that, and I'm trying to get here, where it was, so for example, at page 122 of the record, that was, so, and it is essentially, so 120- You asked about appendix page 122? Appendix page 122, I'm sorry, Your Honor. So the discussion through pages 120 through 122 is Judge Horne's discussion and her fact findings where even if BLM had pursued the wrong course, so essentially termination, whereas it should have canceled, Judge Horne still found that BLM had given Petromex 143 days to try to resolve the various outstanding issue, or in other words, to restore production in paying quantities. And so again, what- How has that shown that they're giving preclusive effect of the underlying factual findings? Well, and I think even Petromex has always said not all facts should be given preclusive effect. So they're trying to pick out that- No, but the fact in this case is so crucial, you know, about the way we're not producing it and not being able to produce in paying quantities. And it was terminated for that reason. And maybe I'm just not understanding your question. I'm not trying to- No, my question throughout, and I've asked in many different ways, but is that that underlying factual finding, it didn't seem like it was given any preclusive effect in this decision. Not the issue of what they want to say, they should have found breach of contract and just had the issue of damages. I'm not going there. I'm just saying is where in this opinion does it show that they gave preclusive effect to that factual finding? So the factual findings, and I don't have it at my fingertips, but with the- So for the termination, so the BLM had- IVLA, sorry. The IVLA had said it was capable of production in paying quantities. So you went down the wrong path. And there was testimony about that. And even Judge Horne had quoted from the IVLA opinion that this is what the IVLA said. And what the BLM had believed was that without the compressor, they could not produce. And so again, instead of cancellation, which the IVLA said you should have done, they terminated instead. And so as- I don't feel like you're going to get an answer. So do you mind if I move on? Please do. Okay. So I would like to ask a question about that. I don't understand where the common law right of termination comes in for the government. Look, I'm not a government contracts expert by any stretch. And to be honest with you, we were not given even a readable copy of the contract in this case. It's completely illegible in the appendix. But I'm accepting what section one and section seven say based on the fact that they're in the opinion below and no one has disputed that. So my question is, since you have a contract that was, I don't know, most likely written by the government, can't be sure, but you have a contract. Okay. And section seven says this is what the government has the right to do in the case of a default. And that requires a judicial proceeding. That's what section seven says. How does the government also have some common law right to say, you know what? I can also, with the same exact set of facts, just choose to terminate and I don't have to follow any of the procedures laid out in section seven. Where does that come from? Like, I don't understand this. I don't understand from where the government has a right to terminate when as here, they contracted quite specifically about the process to be undertaken in the case of default. So can you help me with that? Yes, I can. And so this is a standard oil and gas lease, but also... So I'm sorry, what? It's a standard oil and gas lease. So this, and I apologize that it isn't, it is hard to read in the appendix. I understand that. Not hard, actually impossible. I know. But that's what the IBLA said. You should have canceled it. You had grounds to cancel it. So you should not have terminated it. And so there, so section seven, and that's what was argued below in here, that because you should have canceled it instead of termination, that's a breach of contract. So are you contending that the only way to, I guess, get out of the contract is section seven cancellation? Is that what you're saying? In this case, because the, as the IDLA had determined, it was capable of production and paying quantities, but they just weren't allowed to produce. What the field office should have done is judicially canceled the lease. But again, they brought a breach of contract action to the Court of Federal Claims. And it is, according to Laguna Construction, we can allege a prior, we can claim a prior material breach. And it's undisputed that there were prior material breaches even before the lease was terminated. There was, they failed to pay production royalties. They failed to report production. And they had conceded that. So you're agreeing that there was a violation of section seven? They, correct. They should have judicially canceled the lease. And that's what the IDLA said. And I would point to the IDLA decision where it's, I think it's on the very last page, and I realize I'm getting really short on time here. But in the very last page, and this is it, the appendix 2371, it's clear in that last paragraph where there is a distinction between canceling a lease and terminating such a lease for non-production. So that is something that the trial court did consider in the opinion. And it obviously incorporated that in the discussion for breach of contract as well as prior material breach. I know that you're running a little bit over, but I think it might be helpful if you just give us a few sentences on this prior material breach issue. I feel like that's not really been addressed. Yes, certainly, Your Honor. So with the prior material breach, the, and this is at, discussed in the trial court opinion at 123 through 143, the breaches were, even if this court were to find the lease termination as a separate and distinct breach, what Petromex had failed to do was to report its production. And this is at the appendix, page 1178 through 79. They had also failed to pay a civil penalty. And that's at the appendix 22229 through 2230. I would point out that there's still an outstanding debt to the Treasury of about... So if we were to find the prior material breach to apply here, wouldn't that mean the government would never need to follow Section 7? Well, but, and again, they're distinct causes of action, which is why I think issue preclusion does not apply because IBLA said, BLM, you have to restore their lease to them, which they promptly did. And then this is a separate breach of contract cause of action. So because they brought a common law breach of contract, and even, it was only in the briefing where they were, post-trial briefing, where they were alleging Section 7.  Maybe I didn't state the question. Let me try it one more time. So if we were to find the prior material breach applied here, wouldn't that mean the government would never need to follow Section 7? But no, that would not mean that. Okay, tell me why. Because they, because IBLA had said that this lease was capable of production, the proper route would have been judicial cancellation. And that's why the IBLA restored the leases and reversed the decision to terminate the leases. But then shouldn't the government have had to pursue a Section 7 remedy for the failure to pay the royalties or to increase the bond? Shouldn't they have had to pursue a Section 7 for those failures? For judicial cancellation. And they could have, except by the time of the IBLA decision, Petronex had remedied those failures already. So, but, and so the bond was still outstanding, or not the bond, but the civil penalty. But for example, Petronex had paid the outstanding royalties that were due, had turned in the production reports, and they also had increased that statewide bond. And so that was Petronex's argument while the waiver deepened, but essentially by the time of the IBLA decision, which I believe was in January 2010, Petronex had basically cured some of those underlying prior material breaches. And if there are no further questions, we respectfully request that this Court affirm the trial court's judgment. Thank you. Your Honors, appendix page 57 proves that what my friend just said is absolutely incorrect. Mr. Fancher gave these exact words. No, no, they had not corrected all compliance issues by the time of lifting of the shut-in and after post-ILBLA, IBLA. Judge Moore, about your question, I asked myself the same question. What is this business of these two parallel tracks, termination, cancellation? What's the statutory framework? The answer I sort of taught myself, I think, is that section 226I, which is termination, deals with geological status of the land. It's really a no-fault kind of situation. It's whatever the land is. I don't know what section 226I is. That's the termination statute, and it operates independently of or above or, you know, at a higher level than the lease. So there is a right to terminate if all the boxes can be checked, but those boxes are really... So what's the relationship between 30 U.S.C. 226I and the section 7 of the lease? Right, none that I could see, except that the statute and how, you know, the government relates to its citizens or its contractees under statute always will kind of supersede any kind of contractual issue. What about the relationship between 30 U.S.C. 188 and section 7 of the lease? That is one-to-one relationship. The section 31 mentioned in that paragraph is 30 U.S.C. 188. Finally, there is no deferential fact-finding at all to answer your question, Judge Mazzani, and I'm trying to point to appendix page 122 to demonstrate that because that's the diametrically opposite finding from the IVLA. And Judge Cunningham, section 7 does presuppose that there has been a breach. You can't use the prior material breach doctrine to evade operation of a contractual term that presupposes there was a prior breach. Okay, we thank both counsel. This case is taken under submission.